UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Mount Prospect Academy, Inc. et al

     v.                                        Civil No. 25-cv-056-LM-AJ
                                             Opinion No. 2026 DNH 021 P

Philadelphia Indemnity
Insurance Company

**O R D E R**

      Plaintiffs Mount Prospect Academy, Inc. ("Mount Prospect") and Vermont Permanency Initiative, Inc. ("Vermont Permanency") bring this action against their insurer, Philadelphia Indemnity Insurance Company ("Philadelphia"). Plaintiffs allege claims for breach of contract and seek a declaration of the proper scope of their coverage. Presently before the court is Philadelphia's motion for judgment on the pleadings. Doc. no. 16. For the following reasons, Philadelphia's motion (doc. no. 16) is denied.[1]

**STANDARD OF REVIEW**

      "The standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6)," Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 96 (1st Cir. 2014) (quoting Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007)), with the exception that the court considers the defendant's answer as well as the

---

[1] Although Philadelphia requested a hearing, the court does not believe a hearing would be of assistance. LR 7.1(d).

plaintiffs' complaint, Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54-55 (1st Cir. 2006). "Like Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Id. at 54. The court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Ortolano v. City of Nashua, 680 F. Supp. 3d 70, 76 (D.N.H. 2023) (quoting Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71, 75 (1st Cir. 2014)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

## BACKGROUND

The following facts are undisputed for purposes of Philadelphia's motion. Plaintiffs are nonprofit corporations that provide residential treatment and educational services to children in state custody. Mount Prospect has been in operation since 2003, and Vermont Permanency has been registered to do business in New Hampshire since 2014. In addition, plaintiffs are successor entities to similar organizations that were in operation beginning in the 1980s and 1990s, including the Pike School, Becket Academy, and Oliverian School.

In 2020, David Meehan sued New Hampshire's Sununu Youth Services Center, formerly known as the Youth Development Center ("YDC"), and several other state defendants for abuse he allegedly suffered years prior while at various youth centers in New Hampshire. Since then, hundreds of similar lawsuits have been filed by persons claiming child abuse while in state custody. These cases have come to be known as the "YDC cases." The majority of the plaintiffs in the YDC cases are known only as John Doe or Jane Doe, with corresponding numbers (e.g., John Doe 83) to protect their privacy. Some of the suits involve only state entities as defendants, while some cases also name entities that the state contracted with to provide youth residential services like Mount Prospect and Vermont Permanency. Presently, Mount Prospect and Vermont Permanency are named defendants in over 130 of the YDC cases.

The plaintiffs in the YDC cases brought against Mount Prospect or Vermont Permanency allege that they suffered mistreatment while in Mount Prospect's or Vermont Permanency's custody. Although the facts of each case differ, the mistreatment alleged in each lawsuit includes at least one of the following: inappropriate physical restraint or abuse; strip searches; invasions of privacy; isolation or solitary confinement; overmedication; providing drugs and alcohol to minors; denial of a right to education; negligence; negligent hiring, training, or supervision; breach of fiduciary duty; or civil conspiracy.

Philadelphia has insured the plaintiffs under a series of policies with annual periods starting in July 2008. The policies remained largely the same year-over-year. Each year's policy contained comprehensive general liability coverage,

umbrella coverage, professional liability coverage, and "abusive conduct liability" coverage. The professional liability and abusive conduct liability coverage parts are retroactive to July 7, 2003. In addition, the abusive conduct liability coverage is subject to a "wasting" provision, meaning that defense costs erode the coverage limit (which is $1 million).

Mount Prospect has contacted Philadelphia numerous times to secure defense and indemnity coverage in the YDC cases in which it is a named defendant. Philadelphia has taken the position that the suits for which plaintiffs seek coverage are covered only by the abusive conduct liability coverage part, and only with respect to the 2022 policy. Thus, Philadelphia's position is that plaintiffs are only entitled to $1 million in wasting coverage for all of the over 130 cases in which they are a named defendant. Philadelphia denies that plaintiffs are entitled to coverage under other years' policies, or under any policy's comprehensive general liability coverage, umbrella coverage, or professional liability coverage.

Mount Prospect and Vermont Permanency commenced this action in New Hampshire Superior Court in December 2024, and Philadelphia thereafter removed the suit to this court. The operative complaint contains three claims:

- Count I: "Declaratory Judgment";[2]
- Count II: Breach of contract; and
- Count III: "Bad Faith Breach of Contract."

---

[2] New Hampshire law permits a party to an insurance contract to bring a declaratory judgment action in certain circumstances to determine the scope of the policy's coverage. See RSA 491:22, I, III.

4

## DISCUSSION

Philadelphia seeks judgment on the pleadings on three bases. First, Philadelphia contends that New Hampshire law does not recognize a claim for bad faith breach of contract. Second, Philadelphia asserts that plaintiffs fail to state a breach-of-contract claim because it is honoring its duty to defend—albeit only under a single policy's abusive conduct liability coverage—and because any claim for breach of its duty to indemnify plaintiffs is not yet ripe. Finally, Philadelphia argues that plaintiffs are not entitled to a declaration that Philadelphia's coverage position is incorrect. The court will consider each argument in turn.

I.  New Hampshire Law Recognizes a Claim for Bad Faith Breach of an Insurance Contract

In Lawton v. Great Southwest Fire Insurance Co., 118 N.H. 607 (1978), the New Hampshire Supreme Court held that an insurer's "failure to make prompt payment under the policy" in order to "coerce the insured into accepting less than full performance of the insurer's contractual obligations" breaches the covenant of good faith and fair dealing "implied in every contract." Lawton, 118 N.H. at 612. Success on such a claim, sometimes pled as a "bad-faith-breach-of-insurance-contract claim,"[3] permits the insured to seek an award of consequential damages resulting from the insurer's bad faith breach in addition to the wrongfully withheld

---

[3] See, e.g., Harvey v. Union Mut. Fire Ins. Co., Civ. No. 24-cv-244-LM-AJ, 2025 WL 2938790, at *3 (D.N.H. Oct. 15, 2025).

coverage amounts. Id. at 612-13; Jarvis v. Prudential Ins. Co. of Am., 122 N.H. 648, 653 (1982).

Philadelphia attempts to distinguish Lawton and Jarvis, observing that the policies in those cases involved first-party insurance coverage, whereas the plaintiffs in this case seek coverage for liability to third parties. But nothing about the New Hampshire Supreme Court's analyses in those cases turned on the first-party nature of the policies,[4] and Philadelphia offers no reason that the Court would reach a different conclusion with respect to third-party policies.

Philadelphia also argues that punitive damages are unavailable for success on a contract claim, bad faith or otherwise. However, a Rule 12(c) or 12(b)(6) motion is not an appropriate vehicle to test a plaintiff's entitlement to a particular form of relief. Johnson v. Rapid Sheet Metal, LLC, 560 F. Supp. 3d 623, 629-30 (D.N.H. 2020). "[P]unitive damages are a form of relief and not a 'claim' that is subject to a Rule 12(b)(6) motion to dismiss." Id. at 630 (alteration in original) (quoting Benedetto v. Delta Air Lines, Inc., 917 F. Supp. 2d 976, 984 (D.S.D. 2013)). In any event, plaintiffs clarified in their objection to Philadelphia's motion that they do not seek punitive damages for success on this claim, but rather "consequential

---

[4] In holding that "an insurer's wrongful refusal or delay to settle a first-party claim does not state a cause of action in tort," Lawton did contrast first-party claims from third-party claims and explained why an insurer has a duty of reasonable care in the settlement of third-party claims (the breach of which may give rise to a tort claim) but not first-party claims. Lawton, 118 N.H. at 614 (emphasis added). But its holding recognizing the cognizability of a bad faith contract claim in these circumstances did not rely on the nature of first-party insurance policies. See id. at 610-13.

6

damages—the foreseeable losses caused by Philadelphia's bad-faith denial of coverage, which damages are not capped by the policy limits." Doc. no. 25 at 5-6.

For these reasons, the court declines to dismiss plaintiffs' bad faith claim.

II. Plaintiffs Plausibly Allege a Breach of Contract Claim

"A breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract." Lassonde v. Stanton, 157 N.H. 582, 588 (2008) (brackets omitted) (quoting Poland v. Twomey, 156 N.H. 412, 415 (2007)). An insurer may have a contractual duty to defend its insured in a civil action involving allegations that, if proved, "give rise to the possibility or the potential of liability" covered by the policy. Great Am. Dining, Inc. v. Phila. Indem. Ins. Co., 164 N.H. 612, 627 (2013) (quoting 14 L. Russ & T. Segalla, Couch on Insurance 3d § 200:3, at 200-9 to 200-10 (1997)). This duty arises when, "by any reasonable [construction] of the pleadings, liability of the insured can be inferred." Id. at 626 (emphasis omitted) (quoting N. Sec. Ins. Co. v. Connors, 161 N.H. 645, 650 (2011)).

Philadelphia contends that, even assuming plaintiffs' coverage position is correct, they have not yet breached their duty to defend because they are currently defending plaintiffs under one policy's abusive conduct liability coverage part and its $1 million wasting coverage limit. The court is not persuaded. The New Hampshire Supreme Court has held in other contexts that a claim for breach of an insurer's contractual obligations accrues when the insurer wrongfully denies coverage. Pelissier v. Geico Gen. Ins. Co., 177 N.H. 63, 68 (2024) (underinsured

motorist coverage). The complaint plausibly alleges that Philadelphia has denied plaintiffs coverage under their policies' comprehensive general liability coverage parts, umbrella coverage parts, and professional liability coverage parts. The complaint also plausibly alleges that Philadelphia has denied plaintiffs' coverage under any policy other than their 2022 policy. As the complaint plausibly alleges that Philadelphia is currently denying plaintiffs coverage other than under a single policy's abusive conduct liability coverage part, the court concludes that Philadelphia is not entitled to dismissal of plaintiffs' breach-of-contract claim on this basis.

Philadelphia also argues that any claim for breach of their duty to indemnify plaintiffs is not yet ripe because plaintiffs have not yet been found liable in any of the YDC cases in which they are named as defendants. See Great Am. Dining, 164 N.H. at 627 ("[T]he duty to indemnify . . . arises only when the insured's underlying liability is established." (quotation omitted)). However, having found that plaintiffs plausibly allege a claim for breach of contract premised upon a breach of the duty to defend, the court need not determine whether the plaintiffs have also properly alleged some other theory of contractual liability. See 5B Wright & Miller's Federal Practice & Procedure § 1357 (4th ed.) ("If . . . the court concludes that the complaint states any legally cognizable claim for relief, the court must deny the motion and permit the action to continue.").

Finally, Philadelphia argues that plaintiffs fail to state a claim for breach of contract because plaintiffs stated in their initial disclosures that the only damages they have suffered thus far are their costs of prosecuting the instant lawsuit.

However, Philadelphia fails to demonstrate that it is proper for the court to consider plaintiffs' initial disclosures in ruling on Philadelphia's motion for judgment on the pleadings. See Mercury Sys., Inc. v. S'holder Representative Servs., LLC, 820 F.3d 46, 56 (1st Cir. 2016) (explaining that a court reviewing a motion for judgment on the pleadings may not consider "materials [that] are not fairly incorporated in the pleadings or susceptible to judicial notice"). The pleadings nowhere reference or incorporate plaintiffs' initial disclosures and they are not susceptible to judicial notice. See Fed. R. Evid. 201. Even more fundamentally, under New Hampshire law "[a]n action for breach of contract . . . accrues when the breach occurs [regardless of] whether any damage then occurred or not." Black Bear Lodge v. Trillium Corp., 136 N.H. 635, 637 (1993) (first alteration in original) (quoting Roberts v. Richard & Sons, Inc., 113 N.H. 154, 156 (1973), superseded by statute on other grounds as stated in Wood v. Greaves, 152 N.H. 228, 232 (2005)); see also Cluff-Landry v. Roman Cath. Bishop of Manchester, 169 N.H. 670, 678 (2017) (a claim accrues "when all of the elements necessary for the claim [are] present").

For these reasons, the court declines to dismiss plaintiffs' claim for breach of contract.

III.     The Court Declines to Dismiss Plaintiffs' Claim for Declaratory Relief

Philadelphia seeks dismissal of plaintiffs' claim for declaratory relief on the grounds (A) that it is partially untimely and (B) that Philadelphia's coverage position is correct as a matter of law. The court will take up these arguments in turn.

9

    A.    <u>Timeliness</u>

A Rule 12(b)(6) or 12(c) analysis ordinarily tests the sufficiency of a plaintiff's claims, and "a complaint need not anticipate or overcome affirmative defenses." Urena v. Travelers Cas. & Sur. Co. of Am., 714 F. Supp. 3d 31, 39 (D.N.H. 2024) (quoting Schmidt v. Skolas, 770 F.3d 241, 248 (3d Cir. 2014)). However, "it is sometimes permissible to grant a motion to dismiss based on an affirmative defense, such as the statute of limitations." Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005). This is permissible only when the plaintiff "'affirmatively plead[s] himself out of court' by alleging 'everything necessary to satisfy the affirmative defense.'" Urena, 714 F. Supp. 3d at 39 (quoting Hyson USA, Inc. v. Hyson 2U, Ltd., 821 F.3d 935, 939 (7th Cir. 2016)); accord Fujifilm N. Am. Corp. v. M&R Printing Equip., Inc., 565 F. Supp. 3d 222, 237 (D.N.H. 2021) ("A motion to dismiss based upon a statute-of-limitations defense may be granted 'when the pleader's allegations leave no doubt that an asserted claim is time-barred.'" (quoting Centro Medico del Turabo, 406 F.3d at 6)). Phrased differently, a 12(c) motion premised upon an affirmative defense must be denied when the pleadings "leave open the possibility" that the defense may not apply. Urena, 714 F. Supp. 3d at 39.

As a general rule, New Hampshire law requires an insured to file its declaratory judgment action "to determine coverage of an insurance policy . . . within 6 months after the filing of the writ, complaint, or other pleading initiating the action which gives rise to the question" of coverage. RSA 491:22, III. The running of this six-month limitation period is triggered by the filing of the

10

pleading initiating the action for which the insured seeks a determination of coverage. Matosantos Int'l Corp. v. Hartford Cas. Ins. Co., 573 F. Supp. 3d 600, 602 (D.N.H. 2021). However, under the so-called "late discovery" exception, Binda v. Royal Ins. Co., 144 N.H. 613, 616 (2000), this limitations period "shall not apply where the facts giving rise to [the] coverage dispute are not known to, or reasonably discoverable by, the insurer until after expiration of [the] 6-month period," RSA 491:22, III.[5] In these circumstances, the insured must file its declaratory judgment action within a "reasonable time from the date of discovery." Hartford Ins. Co. v. Bird, 124 N.H. 784, 786 (1984).

Plaintiffs commenced this action on December 17, 2024. However, the parties entered into a "tolling agreement" on June 20, 2024, pursuant to which they agreed that the period between June 20 and December 17 "shall not be asserted or relied upon in any way to compute the running time under any statute of limitations . . . concerning any action or suit, hereafter brought by or between the Parties."[6] Doc. no. 16-3 at 2. Relying upon the general rule set forth in RSA 491:22, III, Philadelphia contends that plaintiffs' declaratory judgment action is untimely with respect to any YDC case initiated more than six months before June 20, 2024.

---

[5] "Although the late discovery exception by its terms applies only when the facts giving rise to the dispute are not known to or reasonably discoverable by the 'insurer,' the New Hampshire Supreme Court has applied the exception to both insured and insurers." Bunker v. Midstate Mut. Ins. Co., Civ. No. 14-cv-274-PB, 2014 WL 4215510, at *2 n.2 (D.N.H. Aug. 25, 2014) (citing Mottolo v. U.S. Fid. & Guar. Co., 127 N.H. 279, 282 (1985)); see also Binda, 144 N.H. at 616.

[6] The complaint references the tolling agreement, and the parties agree it is proper for the court to consider their agreement in ruling on Philadelphia's motion for judgment on the pleadings.

11

Plaintiffs disagree, asserting that the complaint plausibly alleges that they did not learn of Philadelphia's coverage position until December 22, 2023, and, after accounting for the tolling period specified in the parties' June 2024 agreement, they filed within a reasonable time of learning of the coverage dispute.

The court agrees with plaintiffs that, insofar as plaintiffs seek a determination of their coverage for YDC cases filed more than six months before June 20, 2024, the allegations of the complaint fail to show beyond all doubt that their declaratory judgment action is untimely with respect to such cases. Plaintiffs plausibly allege that they had no knowledge or ability to reasonably discover the facts giving rise to the instant coverage dispute until Philadelphia first notified plaintiffs of its coverage position in a letter dated December 22, 2023. See Binda, 144 N.H. at 616-17 (finding adequate notification of facts giving rise to coverage dispute where insurer sent letter warning insured that allegations of underlying writ may not be covered and that insurer would not provide a present defense but would conduct an investigation to determine the propriety of coverage). Accepting these allegations as true, plaintiffs could not show before this point "that some right of [theirs] has been impaired or prejudiced," and any declaratory judgment action would have been nonjusticiable and "based upon a hypothetical set of facts." Carlson v. Latvian Lutheran Exile Church of Bos. & Vicinity Patrons, Inc., 170 N.H. 299, 303 (2017) (quoting Duncan v. State, 166 N.H. 630, 645 (2014)).

Plaintiffs also plausibly allege that they contacted Philadelphia numerous times to clarify its coverage position, but that Philadelphia delayed in responding to their inquiries. See, e.g., doc. no. 22 at 10 (first amended complaint) ("After a May 7,

12

2024 request by Mount Prospect, Philadelphia took until December 13, 2024, to provide an itemization of the defense costs that have wasted the 2022 coverage limit."). Given the tolling agreement, which was executed within six months of Philadelphia's December 2023 letter, a rational trier of fact could conclude that plaintiffs filed this action within a reasonable time after learning of the facts giving rise to the coverage dispute. Cf. Binda, 144 N.H. at 617-18 (concluding in a case that did not involve a tolling agreement "that filing a declaratory judgment action more than six months beyond discovery of the pertinent facts underlying the coverage dispute is not reasonable as a matter of law").

Plaintiffs' allegations, at minimum, "leave open the possibility" that their claim is timely with respect to any YDC case filed more than six months before execution of the tolling agreement. Urena, 714 F. Supp. 3d at 39. The court therefore declines to dismiss plaintiffs' declaratory judgment claim to the extent it seeks a determination of coverage for such cases.

    B.    <u>Philadelphia Fails to Demonstrate That Its Coverage Position Is Correct as a Matter of Law</u>

Philadelphia invites this court to conclude that its coverage position is correct by asserting that it is correct as to a single John Doe complaint, which it claims is "representative" of all of the YDC cases for which plaintiffs seek coverage. Philadelphia identifies no basis upon which the court may conclude at this juncture that the single complaint it identifies may be consulted to determine that Philadelphia's coverage position—that plaintiffs' coverage for all of the YDC cases is limited to a single policy's abusive conduct liability coverage part—is correct as a

13

matter of law as to each and every YDC case. The factual allegations of the various complaints will necessarily be different, and the court cannot conclude at this juncture that Philadelphia's position is correct as to either all or none of those cases.

Before concluding, however, the court notes that this case has the potential to be extremely resource-intensive for both the parties and the court as we approach summary judgment and, if necessary, trial. It could prove quite burdensome to litigate plaintiffs' coverage for each of the over 130 YDC cases they have (thus far) been named as defendants in. The parties are encouraged to explore possibilities to streamline resolution of this action, such as through litigation of coverage for one or more bellwether YDC cases.[7] At this time, however, based on the materials submitted and appropriately considered on Philadelphia's motion for judgment on the pleadings, the court cannot conclude as a matter of law that the single case offered by Philadelphia is or should be that bellwether.

## CONCLUSION

Philadelphia's motion for judgment on the pleadings (doc. no. 16) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 11, 2026

cc:   Counsel of Record

---

[7] The court would entertain a request for a structuring or status conference to the extent that would assist the parties.

14